HDM:JV
F. #2022R00919

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT |
| - against - | |
| THOMAS JOHN SFRAGA, <br>   a/k/a T.J. Stone, | (T. 18 U.S.C. §§ 1343, 2 and 3551 et seq.) |
| Defendant. | 23-MJ-1007 |

- - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

LYSSA BEVAN, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

In or about and between 2019 and 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant THOMAS JOHN SFRAGA, together with others, did knowingly and intentionally devise a scheme and artifice to defraud one or more investors and potential investors, to wit: Victims 1 through 5, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: telephone calls, e-mails, text messages and electronic transfers of money.

(Title T. 18, United States Code, Section 1343, 2 and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been involved in the investigation of numerous cases involving investment fraud, wire fraud and money laundering.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

I.      The Defendant and Relevant Entities

2.      The defendant THOMAS JOHN SFRAGA was a resident of Brooklyn, New York at all relevant times herein.   Beginning in or about September 30, 2011, SFRAGA held himself out as the owner and principal of multiple businesses, including Build Strong Homes LLC and Vandelay Contracting Corp.; among others.

3.      Build Strong Homes LLC is a domestic corporation registered with the New York Department of State and a registered address in Brooklyn, New York.

4.      Vandelay Contracting Corp. is a domestic corporation registered with the New York Department of State and a registered address in Brooklyn, New York.

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. Additionally, statements attributable to individuals herein are set forth in substance and in part, and dates and times are approximate unless otherwise indicated.

II.     The Fraudulent Schemes

5.      As set forth in detail below, in or about and between approximately 2019 and 2022, the defendant THOMAS JOHN SFRAGA defrauded multiple victims by soliciting monies as investments and loans to purchase, renovate and resell homes, to pay initial start-up and insurance costs for a major construction contract and to invest in a cryptocurrency "virtual wallet."   In truth, SFRAGA converted the monies to his own benefit and expenses, and to pay earlier victims and business associates.

        A.  *Victim 1*

6.      Victim 1 is a Brooklyn, New York resident whose identity is known to your affiant.

7.      In or before 2018, Victim 1 met the defendant THOMAS JOHN SFRAGA through a mutual friend.

8.      The defendant THOMAS JOHN SFRAGA held himself out to Victim 1 as a real estate investor who purchased, renovated, and then resold "flipped" homes.   SFRAGA told Victim 1 that he had a family member who worked for a bank and who provided insider leads on foreclosure properties that SFRAGA could acquire and "flip" for a profit.

9.      The defendant THOMAS JOHN SFRAGA told Victim 1, in sum and substance, that he had flipped multiple homes for a profit and invited Victim 1 to invest in flipping a property with SFRAGA.

10.     Victim 1 expressed reservations about investing in flipping homes.   In response, the defendant THOMAS JOHN SFRAGA addressed his concerns, persuading Victim 1 to consider investing with SFRAGA in purchasing, renovating and reselling a home.

11.     In or about 2019, the defendant THOMAS JOHN SFRAGA told Victim 1 that he had an opportunity to buy a home in New Jersey for renovation and resale (the "New Jersey Property") and invited Victim 1 to join him by investing in the purchase and renovation. SFRAGA told Victim 1 that the house cost approximately $130,000 to $150,000 to purchase and would cost another $50,000 to renovate before resale.   SFRAGA told Victim 1 that Victim 1 would receive a 30-40% return if he invested in the New Jersey Property.

12.     On or about August 20, 2019, in reliance on SFRAGA's statements, Victim 1 gave SFRAGA a $40,000 certified bank check to Build Strong Homes LLC to purchase and renovate the New Jersey Property.

13.     Based upon our investigation, including a review of Build Strong Homes LLC's bank records, Build Strong Homes LLC did not purchase and renovate any New Jersey homes in or about August 2019.   Instead, the defendant THOMAS JOHN SFRAGA deposited Victim 1's $40,000 into a Build Strong Homes LLC bank account and used the monies to pay for debit card purchases and transferred the monies to SFRAGA's personal and other business bank accounts and to make payments to earlier victims who had purportedly invested with SFRAGA.

14.     Over the next year, after Victim 1 gave the defendant THOMAS JOHN SFRAGA the $40,000 check, SFRAGA falsely told Victim 1 that he had purchased the New Jersey Property, was renovating the property and had located a buyer.   Specifically, SFRAGA told Victim 1 that a United States veteran was purchasing the renovated property through a Veterans Administration loan.   SFRAGA told Victim 1 that the home would be sold to the veteran in August 2020, and that Victim 1 would receive his $40,000 investment and an additional 30-40% return.

15.     Nonetheless, as August 2020 approached and passed, the defendant THOMAS JOHN SFRAGA began offering a series of excuses for the delay in returning Victim 1's investment.   He told Victim 1 that the Veterans Administration loan was delayed or not being issued, and then later that SFRAGA's father was terminally ill and that SFRAGA was busy handling resulting family matters.

16.     After December 2020, Victim 1 started asking the defendant THOMAS JOHN SFRAGA for the return of his investment.   SFRAGA continued offering excuses and occasionally made some small repayments totaling approximately $10,000.   SFRAGA has since stopped responding to Victim 1's communications and has not returned the balance of Victim 1's investment.

     B.  *Victims 2 and 3*

17.     Individual 1, whose identity is known to your affiant, was a registered stockbroker residing and doing business in New York, New York at all relevant times herein. Individual 1 introduced the defendant THOMAS JOHN SFRAGA to Victims 2 and 3, telling them, in sum and substance, that he and SFRAGA were partners in buying, renovating and selling homes.

18.     Victim 2 was a Brooklyn, New York resident whose identity is known to your affiant.

19.     Victim 3 is a California resident whose identity is known to your affiant.

20.     The defendant THOMAS JOHN SFRAGA held himself out to Victims 2 and 3 as a real estate investor who purchased, renovated and resold homes.   SFRAGA claimed he purchased foreclosure properties that he could renovate and "flip" for a profit.

21.     The defendant THOMAS JOHN SFRAGA separately told Victims 2 and 3, in sum and substance, that he had flipped multiple properties for a profit and generally invited Victims 2 and 3 to invest in flipping properties with SFRAGA.

22.     In or before approximately October 2019, the defendant THOMAS JOHN SFRAGA separately told both Victims 2 and 3 that he had identified one or more properties for purchase, renovation and resale, and separately invited Victims 2 and 3 to invest with SFRAGA in flipping the properties.

23.     The defendant THOMAS JOHN SFRAGA told Victim 2 that his money would be used to buy homes and construction materials, and to pay workers to renovate the homes.   SFRAGA never disclosed that he owed money to other previous investors or that Victim 2's investment would be used to pay any other investors.   SFRAGA initially proposed that he would pay Victim 2 a 20% return on any investment, but Victim 2 demurred saying that rate of return would be unsustainable and would leave SFRAGA with little returns for himself. Ultimately, SFRAGA told Victim 2 that SFRAGA would pay Victim 2 a 12% return on any investment, with disbursements from time-to-time.   On or about October 31, 2019, Victim 2 wired $50,000 from his bank account to Build Strong Homes LLC's bank account.

24.     The defendant THOMAS JOHN SFRAGA and Victim 3 communicated about the potential investment through interstate telephone calls and text messages when Victim 3 was in California and, based on the investigation and my training and experience, I believe when SFRAGA was in New York.   SFRAGA also sent Victim 3 directions for wiring money for the purported investment by interstate text messages.   On October 31, 2019, Victim 3 electronically transferred $250,000 from his bank account in Chula Vista, California to Build

Strong Homes LLC's bank account in Brooklyn, New York "For The Purpose of Purchasing 2 Homes With Build Strong Homes LLC To B E [sic] Remodeled For Resale."

25.     Based upon the investigation, including a review of Build Strong Homes LLC's bank records, Build Strong Homes LLC did not purchase or renovate any homes in or about October 2019.   Instead, the $300,000 wired into the Build Strong Homes LLC's bank account from Victims 2 and 3 was withdrawn by the defendant THOMAS JOHN SFRAGA as cash, used to pay for SFRAGA's debit card purchases, diverted to SFRAGA's personal and other bank accounts, and used to make payments to earlier victims who had purportedly invested with SFRAGA.

26.     Beginning in or about 2020, Victim 2 began asking the defendant THOMAS JOHN SFRAGA for the return of his investments.   SFRAGA continued offering excuses until approximately April 2021, when he told Victim 2, in sum and substance, "I am so embarrassed, it was basically a scam."   SFRAGA claimed that he had sold the properties that he had invested Victim 2's funds into months earlier.   Nonetheless, based on the investigation, Victim 2's $50,000 investment was never used to purchase any properties.

   *C. Victim 4*

27.     Victim 4 is a Long Island, New York resident whose identity is known to your affiant.

28.     In or about 2017, Victim 4 met the defendant THOMAS JOHN SFRAGA through a mutual acquaintance.

29.     The defendant THOMAS JOHN SFRAGA again held himself out as a real estate investor who purchased, renovated and "flipped" homes.   SFRAGA claimed to have a

family member who worked for a bank and who provided insider leads on foreclosure properties that SFRAGA claimed he could acquire and "flip" for a profit.

30.     The defendant THOMAS JOHN SFRAGA told Victim 4, in sum and substance, that he had flipped multiple properties for a profit and generally invited Victim 4 to invest in a property for flipping with SFRAGA.

31.     In or about 2017, Victim 4 and his father invested $300,000 with the defendant THOMAS JOHN SFRAGA to purchase, renovate and resell three homes.   SFRAGA told Victim 4 and his father that they would receive a $100,000 profit on their investment. Nonetheless, by on or about August 2019, SFRAGA had instead returned the $300,000 investment through multiple payments, but without any of the promised profit.

32.     In or about approximately January 2021, the defendant THOMAS JOHN SFRAGA approached Victim 4 and Victim 4's relative about a new investment opportunity. SFRAGA met Victim 4 and Victim 4's relative in Oyster Bay, Long Island.   At the meeting, SFRAGA falsely told Victim 4 and Victim 4's relative that SFRAGA had an opportunity to perform construction and rehabilitation work on a building located in Long Island City, New York (the "Long Island City Project").   The defendant THOMAS JOHN SFRAGA falsely told Victim 4 and Victim 4's relative that SFRAGA had a potential $6 million contract with possible additional fees and extra work that would make the job very profitable and asked Victim 4 for a loan to cover SFRAGA's start-up costs, including required insurance contracts.

33.     The defendant THOMAS JOHN SFRAGA falsely told Victim 4 and Victim 4's relative that once he had the $6 million contract and insurance in place, SFRAGA would receive 10% of the contract price (i.e., $600,000) for initial costs and expenses, and would be able to repay their loan immediately with an additional 25% return.   SFRAGA falsely told

Victim 4 and Victim 4's relative that SFRAGA would have the Long Island City Project contract in place in approximately March 2021.

34.     Victim 4 and Victim 4's relative expressed interest in the business opportunity but told the defendant THOMAS JOHN SFRAGA that they did not have the total amount that SFRAGA requested.   Instead, Victim 4 told SFRAGA that he could invest $50,000 in cash that Victim 4 had received in wedding gifts but requested more information about the project.   In response to Victim 4's request, SFRAGA said he would bring him the plans for the Long Island City Project and would have his lawyer draw up legal documents for a loan.

35.     On or about February 5, 2021, the defendant THOMAS JOHN SFRAGA met Victim 4 and Victim 4's relative in Bayville, Long Island.   At the meeting, SFRAGA provided Victim 4 with architectural plans for a building located in Long Island City, New York, purportedly for the $6 million Long Island City Project that he would be working on, and a proposed loan agreement.   In reliance on SFRAGA's misrepresentations that the money would be used to start up the Long Island City Project, Victim 4 signed the first loan agreement and gave SFRAGA $50,000 cash.

36.     Shortly after taking the initial $50,000 cash, the defendant THOMAS JOHN SFRAGA told Victim 4 and Victim 4's relative that SFRAGA needed another $50,000 cash to obtain insurance required to allow SFRAGA to perform the work on the Long Island City Project.   SFRAGA falsely told Victim 4 and Victim 4's relative that he needed cash because he could obtain a significantly discounted price if he paid an insurance broker in cash.   SFRAGA falsely told Victim 4 that, as soon as he received the additional $50,000 cash, he would then pay the insurance broker and move ahead with the contract.

37.     On or about March 14, 2021, in reliance on SFRAGA's misrepresentations, Victim 4 signed a second loan agreement and gave SFRAGA another $50,000 cash.

38.     Based on the investigation, the defendant THOMAS JOHN SFRAGA was not involved in the Long Island City project.   The architectural plans that SFRAGA provided to Victim 4 were for a building and work that SFRAGA was not invited to bid on, and SFRAGA had not communicated with the owner of the actual Long Island City property identified in the architectural plans or the architect who had drawn the plans provided to Victim 4.

39.     When defendant THOMAS JOHN SFRAGA failed to repay the first loan by April 5, 2021, Victim 4 and Victim 4's relative began contacting SFRAGA.   SFRAGA began offering Victim 4 excuses for the delay.   In mid-April 2021, SFRAGA falsely told Victim 4 and Victim 4's relative that SFRAGA's father, who purportedly lived in Alaska, was dying and that SFRAGA had to travel to Alaska for his father's final days.   SFRAGA has since stopped responding to Victim 4's communications and has not returned Victim 4's investment.

D. Victim 5

40.     Victim 5 is a Brooklyn, New York resident whose identity is known to your affiant.

41.     In or about February 2022, Victim 5 was showing rental space at a downtown Manhattan building to prospective tenants.   In connection with his work at the building, Victim 5 met the defendant THOMAS JOHN SFRAGA.   SFRAGA introduced himself under the alias "TJ Stone".

42.     Thereafter, Business 1, whose identity is known to your affiant, rented the majority of the downtown Manhattan building's space.   Business 1 operated in the

cryptocurrency field.   After Business 1 rented the space, Victim 5 communicated with SFRAGA concerning the building's day-to-day care and maintenance.

43.     SFRAGA falsely told Victim 5 that he had helped Individual 2, whose identity is known to the affiant, set up Business 1 and that SFRAGA was Individual 2's "partner" in Business 1.   Unbeknownst to Victim 5, in truth the defendant THOMAS JOHN SFRAGA had only contracted with Business 1 to provide maintenance services at the Manhattan building.

44.     In or about May 2022, the defendant THOMAS JOHN SFRAGA told Victim 5 that he was involved with a network of cryptocurrency investors in a business model called "staking."   SFRAGA told Victim 5 that the investors set up "virtual wallets" or "E wallets," purchased pools of cryptocurrency and held the cryptocurrency in the "E wallets," and then sold portions of the "E wallets" and the cryptocurrencies held therein to other investors. SFRAGA told Victim 5 that the "staking" generated significant returns at little or no risk. SFRAGA described the investment as an "ironclad situation" with "no risk."   SFRAGA told Victim 5 that the investors would profit whether the value of cryptocurrency rose or fell, because the investors would sell the "staking" to others and profit off of any cryptocurrency transactions in the "E wallets."

45.     The defendant THOMAS JOHN SFRAGA told Victim 5 that if he invested $30,000, he could get a 60% return in 3 months.   SFRAGA told Victim 5 that the investment would be locked in, and unavailable for withdrawals, for the 3 months, but could be withdrawn or reinvested in a new "staking" after the 3 months.   SFRAGA told Victim 5 that there was an upcoming round of investment in a new "staking," but that the minimum investment was $25,000 and that the deadline for investment was June 8, 2022, at the end of a 3-month period and the start of a new "staking."

46.     The defendant THOMAS JOHN SFRAGA told Victim 5 that he would set up an electronic wallet for the "staking" and that he would give Victim 5 access to monitor the "E wallet" on his phone at a later date.   SFRAGA also told Victim 5 that he would provide Victim 5 with a receipt for his investment in the "staking."   SFRAGA directed Victim 5 to provide a check made out to Vandelay Contracting Corp. and falsely told Victim 5 that Vandelay Contracting Corp. was a subsidiary of Business 1.

47.     On June 8, 2022, in reliance on the defendant THOMAS JOHN SFRAGA's misrepresentations, Victim 5 met SFRAGA in Manhattan and handed SFRAGA a bank check for $30,000 made to Vandelay Contracting Corp.

48.     Later that same day, the defendant THOMAS JOHN SFRAGA cashed Victim 5's $30,000 check at a check-cashing business in Jersey City, New Jersey.   After cashing the check, SFRAGA did not invest the funds in any cryptocurrency "stake" or business, did not purchase $30,000 of cryptocurrency and did not purchase or create any "E wallet."

49.     In the following weeks, SFRAGA began offering Victim 5 a series of excuses for why the money had not been invested, the "E wallet" had not been set up, and why Victim 5 could not monitor his investment.   SFRAGA did not disclose that he had already cashed the bank check and converted the funds for other uses.

50.     Victim 5 and the defendant THOMAS JOHN SFRAGA later made an appointment to meet so that SFRAGA could set up the "E Wallet" and put it on Victim 5's phone, but SFRAGA did not show up for the meeting.   SFRAGA also stopped coming to the Manhattan building and Business 1.

51.     In or about the end of June 2022, the defendant THOMAS JOHN SFRAGA texted Victim 5 that he had suffered a heart attack and was hospitalized.

52.    In or about July 2022, Victim 5 learned that the defendant THOMAS JOHN SFRAGA was not a partner in Business 1 and was told that SFRAGA had conned others out of money as well.

53.    Victim 5 has not heard from the defendant THOMAS JOHN SFRAGA since at least July 30, 2022, and has not received any of his money back.

WHEREFORE, your deponent respectfully requests that the defendant THOMAS JOHN SFRAGA, be dealt with according to law.

In addition, it is respectfully requested that this affidavit and arrest warrant be filed under seal until further order of the Court.   Premature disclosure of this affidavit and arrest warrant could afford the defendant the opportunity to flee from prosecution.

Lyssa Bevan
Special Agent
Federal Bureau of Investigation

Sworn to before me remotely
this 9th day of November, 2023

Hon. Ramon E. Reyes, Jr. Digitally signed by Hon. Ramon E. Reyes, Jr.
Date: 2023.11.09 19:12:35 -05'00'

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK